Filed 8/23/21  P. v. Blackwood CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSHUA LEROY BLACKWOOD,<br><br>    Defendant and Appellant. | F078385<br><br>(Super. Ct. No. 4006264)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Nancy Ashley, Judge.

Matthew J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Jennifer M. Poe, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING AND DISSENTING OPINION**

## INTRODUCTION

Appellant Joshua Leroy Blackwood was convicted by jury of second degree robbery (Pen. Code, § 211).[1]  The trial court sentenced Blackwood to a term of three years in state prison.  Blackwood raises the following issues on appeal:  (1) there is insufficient evidence to support his conviction for robbery based upon the existence of an uncharged conspiracy; (2) the trial court prejudicially erred by instructing the jury on aiding and abetting and the natural and probable consequences doctrine because there was no evidence to support either instruction; (3) defense counsel committed ineffective assistance of counsel by failing to object to these jury instructions; and (4) the trial court erred by failing to hold a hearing on his ability to pay various fines and fees pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

The judgment is affirmed.

## PROCEDURAL HISTORY

On April 10, 2018, the Stanislaus County District Attorney filed an information charging Blackwood with one count of robbery (§ 211).  The information further alleged he had suffered three prior prison term convictions within the meaning of section 667.5, subdivision (b).

On June 8, 2018, Blackwood was found guilty of second degree robbery.  Following a bench trial, the court found the three prior prison term enhancement allegations had not been proven.

On November 7, 2018, the trial court sentenced Blackwood to the midterm of three years in state prison.

On November 8, 2018, Blackwood filed a timely notice of appeal.

---

[1]     All undefined statutory citations are to the Penal Code unless otherwise indicated.

# FACTUAL HISTORY

On January 16, 2018, at approximately 3:30 p.m., Oscar P. was sitting inside his car on Seventh Street in Modesto. As he was talking on the phone, two young men approached his car. One of the men opened Oscar's driver's side door. The man put his hand behind his back as if he was going to take out a weapon. At the same time, the second man, Blackwood, opened the passenger's side door.

Blackwood grabbed Oscar's jacket, which was sitting on the passenger's seat, and began pulling it out of the vehicle. Oscar had a cell phone and a cell phone charger inside of his jacket. Oscar, fearing the man at his driver's side door had a weapon, remained still so that he would not get hurt.

Once Blackwood had the jacket, both men fled. The men ran together for less than a minute and then ran in different directions.

Carlos M. and Diana O. were driving nearby when they observed Oscar on his cell phone. They also observed two people running together. Oscar told Carlos and Diana that the two people running away had just robbed him. Carlos and Diana told Oscar to get inside their truck so they could catch the men.

They began following Blackwood. Oscar and his companions lost sight of Blackwood for approximately five minutes, but eventually observed him near a flea market. Blackwood was wearing Oscar's jacket. Oscar got out of the vehicle and began chasing Blackwood. Blackwood took off the jacket, threw it on the ground, and began running. He subsequently tripped, allowing Oscar to tackle him and hold him down.

The owner of the flea market and another man held Blackwood down and used zip ties to restrain Blackwood's hands and feet. As Blackwood struggled to escape, he claimed the person he was with was the individual who had robbed Oscar. Oscar recovered his jacket with the cell phone and cell phone charger inside. Oscar testified that the jacket, together with the cell phone and charger, was worth about $300.

3.

## DISCUSSION

**I.    Substantial Evidence Supports Blackwood's Conviction for Second Degree Robbery**

Blackwood contends there is insufficient evidence to support his conviction for robbery based upon conspiracy.  Blackwood further contends the trial court erroneously instructed the jury on this theory of liability, which "likely added to the jury's confusion and enhanced the chance of prejudice."

With respect to Blackwood's former assertion, we conclude substantial evidence supports Blackwood's conviction for robbery based upon the existence of an uncharged conspiracy to commit robbery.  As to his latter assertion, we conclude that although the trial court erred by instructing the jury with CALCRIM No. 417, Blackwood has failed to show prejudice as a result of the trial court's instructional error.  We address the latter issue in part II, *post*.

### A.    Relevant Legal Principles

"When reviewing a challenge to the sufficiency of the evidence, we ask ' "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citations.]  Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for ' "substantial evidence— that is, evidence which is reasonable, credible, and of solid value" ' that would support a finding beyond a reasonable doubt." (*People v. Banks* (2015) 61 Cal.4th 788, 804.)  "We presume, in support of the judgment, the existence of every fact the trier of fact could reasonably deduce from the evidence, whether direct or circumstantial." (*People v. Clark* (2016) 63 Cal.4th 522, 610.)  We may reverse for lack of substantial evidence only if " 'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

In the instant case, conspiracy was offered as one of the theories of liability for the charged substantive offense of robbery. An " 'uncharged conspiracy may properly be used to prove criminal liability for acts of a coconspirator.' " (*People v. Valdez* (2012) 55 Cal.4th 82, 150.) " '[L]ike aiding and abetting, conspiracy … is itself a *theory of liability*.... "For purposes of complicity in a cofelon's [criminal] act, the conspirator and the abettor stand in the same position." ' " (*Ibid*.)

Pursuant to section 182, subdivision (a)(1), a conspiracy consists of two or more persons conspiring to commit any crime. Conspiracy requires proof of: (1) an agreement; (2) the specific intent to conspire; (3) the specific intent to commit a target offense; and (4) an overt act towards achievement of that goal. (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1128.) Here, the alleged target offense was robbery. "Robbery is the taking of 'personal property in the possession of another against the will and from the person or immediate presence of that person accomplished by means of force or fear and with the specific intent permanently to deprive such person of such property.' " (*People v. Lewis* (2008) 43 Cal.4th 415, 464; § 211.)

**B.     Analysis**

The record here contains ample evidence supporting the existence of an informal agreement between Blackwood and his accomplice to commit robbery. Oscar testified he was sitting in his car when two men approached at the same time. Blackwood's accomplice approached the driver's side door of Oscar's vehicle as Blackwood approached the passenger's side door. Blackwood's accomplice put his hand behind his back, near his waist, to presumably make it appear as if he had a concealed weapon. At the same time, Blackwood reached into Oscar's vehicle and grabbed Oscar's jacket. Oscar, afraid for his safety, remained still so the men would not harm him. After the robbery, both men initially fled in the same direction.

Based upon Blackwood's actions before, during, and after the robbery, there is ample evidence showing Blackwood and his accomplice acted with the shared intent to

5.

commit robbery. Blackwood's coordination with his unidentified accomplice evinces advance planning, and based upon Oscar's testimony, reasonably permitted Blackwood to accomplish the taking of Oscar's jacket. Thus, substantial evidence supports Blackwood's conviction for robbery based upon the existence of an uncharged conspiracy.

Blackwood contends there was no evidence of an affirmative agreement to commit robbery. Proof of conspiracy does not require evidence of a formal agreement or even one expressed in words. (*People v. Longines* (1995) 34 Cal.App.4th 621, 626; *People v. Jordan* (1937) 24 Cal.App.2d 39, 50.) As Blackwood acknowledges, " '[t]he existence of a conspiracy may be inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy.' " The circumstances before, during, and after the robbery here strongly support the conclusion Blackwood and his accomplice conspired to commit robbery, and then worked together to achieve their plan.

Although Blackwood suggests the circumstances underlying the robbery are also susceptible to exculpatory inferences, we must accept all logical inferences reasonably drawn by the jury in finding Blackwood guilty. "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053–1054.) Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances also might reasonably be reconciled with a contrary finding does not warrant the judgment's reversal. (*Ibid*.) In any event, we do not find Blackwood's assertion that he was merely searching for an opportunity to commit a petty theft, or that he did not know his unidentified accomplice, to be persuasive.

6.

Finally, Blackwood directs this court to cases that he contends support his assertion that there is insufficient evidence of a conspiracy to commit robbery. (*People v. Bentley* (1888) 75 Cal. 407; *People v. Osslo* (1958) 50 Cal.2d 75; *People v. Kobey* (1951) 105 Cal.App.2d 548; *People v. Cockrell* (1965) 63 Cal.2d 659; *People v. Herrera* (1999) 70 Cal.App.4th 1456; *People v. Martin* (1983) 150 Cal.App.3d 148.) Comparison with other sufficiency of the evidence cases is rarely helpful, as each case necessarily depends on its own facts. The instant case is no exception. None of the cases Blackwood relies upon undermine our conclusion that the evidence was sufficient to permit the jury to conclude he conspired to commit robbery, and then acted with his unidentified accomplice to accomplish this goal.

## II. The Trial Court's Instruction on Aiding and Abetting and the Natural and Probable Consequences Doctrine

At trial, the jury was instructed it could find Blackwood guilty of robbery under the following theories of liability: (1) traditional aiding and abetting; or (2) based upon his membership in an uncharged conspiracy. With respect to conspiracy, the jury could find Blackwood was a member of an uncharged conspiracy to commit robbery, or that robbery was the natural and probable consequence of another intended crime. The jury was initially instructed that the target offense was "theft," and the natural and probable consequence of that offense was "robbery." The trial court subsequently, but erroneously, reinstructed the jury that the target offense was "robbery," and "robbery" was the natural and probable consequence of that crime.

Blackwood argues the trial court prejudicially erred by instructing the jury on aiding and abetting and the natural and probable consequences doctrine. He did not object to either instruction at trial.

The People contend the jury was properly instructed on aiding and abetting based upon the evidence adduced at trial. They concede however that not only was there insufficient evidence to support the trial court's instruction on the natural and probable

7.

consequences doctrine, modifications to this instruction permitted the jury to consider a legally erroneous theory of liability.  The People assert the error was nonetheless harmless beyond a reasonable doubt.  We agree.

### A.    Aiding and Abetting (CALCRIM Nos. 400, 401, 1603)

#### 1.    Relevant Legal Principles

"Under California law, a person who aids and abets the commission of a crime is a 'principal' in the crime, and thus shares the guilt of the actual perpetrator."  (*People v. Prettyman* (1996) 14 Cal.4th 248, 259.)  " '[A]n aider and abettor is a person who, "acting with (1) knowledge of the unlawful purpose of the perpetrator[ ] and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates the commission of the crime." ' "  (*People v. Jurado* (2006) 38 Cal.4th 72, 136.)  The test is "whether the accused in any way, directly or indirectly, aided the perpetrator by acts or encouraged him by words or gestures."  (*People v. Villa* (1957) 156 Cal.App.2d 128, 134.)  The primary actor need not expressly communicate his criminal purpose to the defendant, "since that purpose may be apparent from the circumstances."  (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 531–532.)

#### 2.    Analysis

Blackwood contends the trial court erroneously instructed the jury on the aiding and abetting theory of liability for two reasons.  First, he contends the evidence proffered was insufficient to support the instruction because he could not have aided and abetted a crime if he were the alleged direct perpetrator of that crime.  Second, relying upon *People v. Perez* (2005) 35 Cal.4th 1219 (*Perez*), he argues the prosecutor failed to present evidence of a predicate criminal act committed by Blackwood's accomplice to which Blackwood contributed.  According to Blackwood, because the robbery could only have been committed in concert, he could not be convicted as an aider and abettor.  His assertion is unpersuasive.

First, contrary to Blackwood's argument, the roles of aiders/abettors and direct perpetrators are not mutually exclusive. "[A]ider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime." (*Perez*, *supra*, 35 Cal.4th at p. 1225.) The latter aiding and abetting requirement is satisfied where the aider and abettor "by act or advice aids, promotes, encourages or instigates, the commission of the crime." (*People v. Beeman* (1984) 35 Cal.3d 547, 561.)

Our Supreme Court has explained that "[w]hen two or more persons commit a crime together, both may act in part as the actual perpetrator *and* in part as the aider and abettor of the other, who also acts in part as an actual perpetrator." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1120, italics added.) "[T]he dividing line between the actual perpetrator and an aider and abettor is often blurred. It is often an oversimplification to describe one person as the actual perpetrator and the other as the aider and abettor. When two or more persons commit a crime together, both may act in part as the actual perpetrator *and* in part as the aider and abettor of the other, who also acts in part as an actual perpetrator." (*Ibid*.) "The aider and abettor doctrine merely makes aiders and abettors liable for their accomplices' actions as well as their own. It obviates the necessity to decide who was the aider and abettor and who the direct perpetrator or to what extent each played which role." (*Ibid*.)

Based upon the evidence adduced at trial, the jury could reasonably conclude that neither Blackwood nor his accomplice may have personally performed every element of the charged offense of robbery. Although the commission of robbery can be a continuing offense not requiring the use of force or fear during the initial capture of the stolen property (*People v. Gomez* (2008) 43 Cal.4th 249, 256), Oscar testified he did not move

9.

because he was afraid Blackwood's accomplice may have had a weapon. Blackwood's accomplice's act of posturing as if he had a weapon therefore reasonably permitted the jury to conclude that fear was used to accomplish the theft of Oscar's jacket. Thus, under the facts presented, the instruction on aiding and abetting was appropriate.

Second, Blackwood's reliance upon *Perez* is unpersuasive as the evidence here clearly suggests Blackwood's accomplice was attempting to commit robbery. In *Perez*, the defendant was arrested in possession of methamphetamine precursors, which he intended to sell to a man known to him as " 'Antonio.' " (*Perez*, *supra*, 35 Cal.4th at p. 1233.) Our Supreme Court held that Perez could not be convicted of either aiding and abetting Antonio's possession of precursors with the intent to manufacture methamphetamine, or of directly possessing the precursors with the intent to manufacture methamphetamine. (*Ibid.*) The court reasoned, "for a defendant to be found guilty under an aiding and abetting theory, someone other than the defendant must be proven to have attempted or committed a crime; i.e., absent proof of a predicate offense, conviction on an aiding and abetting theory cannot be sustained." (*Id*. at p. 1225.)

The prosecutor had persuaded the trial court to give aiding and abetting instructions despite the absence of proof of any crime by Antonio, completed or attempted. (*Perez*, *supra*, 35 Cal.4th at p. 1227.) The People argued the instruction was warranted because Perez had aided and abetted Antonio's manufacture of methamphetamine by intending to sell methamphetamine precursors to Antonio. (*Ibid.*) Our Supreme Court held that"[w]hether the theory was that Perez intended to aid and abet Antonio's actual manufacture of methamphetamine ... or to aid and abet Antonio's possession of hydriodic acid precursors with the intent to manufacture methamphetamine ..., no evidence established that Antonio ever violated, or attempted to violate, either statute. Without proof of a criminal act by Antonio to which Perez contributed, the prosecution could not convict Perez as an aider and abettor." (*Ibid.*)

Upon the facts presented, "Perez could be convicted as a direct perpetrator or not at all." (*Ibid.*)

The crux of the issue in *Perez* was that there was no proof of a crime having been committed or attempted by anyone other than the defendant. (*Perez*, *supra*, 35 Cal.4th at pp. 1225–1227.) Such is not the case here as Blackwood's accomplice was clearly attempting to commit robbery. Attempted robbery requires the defendant to have "gone further than mere preparation." (*People v. Vizcarra* (1980) 110 Cal.App.3d 858, 863.) "The act that goes 'beyond mere preparation' need not constitute an element of the target crime [citation], and it ' "need not be the ultimate step toward the consummation of the design." ' [Citation.] Instead, ' "it is sufficient if [the conduct] is the first or some subsequent act directed towards that end after the preparations are made." ' [Citation.] In other words, … the act must represent ' "some appreciable fragment of the crime." ' " (*People v. Watkins* (2012) 55 Cal.4th 999, 1021.)

Our review of the record discloses substantial evidence showing that Blackwood's accomplice's conduct went beyond "mere preparation." By approaching Oscar's driver's side door and posturing as if he had a weapon, Blackwood's accomplice was clearly attempting to facilitate a robbery. (See *People v. Moran* (1912) 18 Cal.App. 209 [the defendant's act of pushing open a door of a saloon but subsequently fleeing because of a large crowd inside was a sufficient overt act for attempted robbery; see also *People v. Bonner* (2000) 80 Cal.App.4th 759, 762–763 [defendant's act of going to a hotel, armed and with a mask, and waiting in hiding for a victim to approach was sufficient to support his conviction for attempted robbery, although he was never in close proximity to the victims, and he made no demand for their money].)

As Blackwood's assertions to the contrary rest upon his erroneous assumption that an aider and abettor cannot also act as a direct perpetrator of a crime, we do not address them. The record discloses strong evidence that Blackwood and his accomplice were

working together to accomplish the robbery, and as a result, the aiding and abetting instruction was required.

**B.     The Natural and Probable Consequences Doctrine (CALCRIM No. 417)**

Blackwood contends the trial court prejudicially erred by instructing the jury on the natural and probable consequences doctrine as it applies to an uncharged conspiracy because the facts presented did not support the instruction.  The People concede the instruction was both factually and legally erroneous, but assert the instruction was harmless beyond a reasonable doubt.  We agree with the People.

**1.     Background**

As relevant here, CALCRIM No. 417 originally provided the following:

> "A member of a conspiracy is criminally responsible for the crimes that he conspires to commit, no matter which member of the conspiracy commits the crime.

> "A member of a conspiracy is also criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a natural and probable consequence of the common plan or design of the conspiracy.  This rule applies even if the act was not intended as part of the original plan.

> "A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes.  In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.

> "A member of a conspiracy is not criminally responsible for the act of another member if that act does not further the common plan or is not a natural and probable consequence of the common plan.

> "To prove that the defendant is guilty of the crime of Robbery, the People must prove that:

> "1.     The defendant conspired to commit the following crime:  theft;

12.

> "2. A member of the conspiracy committed theft to further the conspiracy;

> "AND

> "3. Robbery was a natural and probable consequence of the common plan or design of the crime that the defendant conspired to commit."

The jury was initially instructed that the target offense was "theft." However, defense counsel asserted the instruction should be modified to state that the target offense was "robbery." The trial court modified the instruction as requested. The jury was reinstructed as follows:

> "To prove that the defendant is guilty of the crime of Robbery, the People must prove that:

> "1. The defendant conspired to commit the following crime: *Robbery*

> "2. A member of the conspiracy committed theft to further the conspiracy;

> "AND

> "3. Robbery was the natural and probable consequence[] of the common plan or design of the crime that the defendant conspired to commit."

During closing argument, the prosecutor did not discuss or otherwise refer to the natural and probable consequences doctrine as it pertains to an uncharged conspiracy. Rather, he theorized Blackwood was guilty of robbery based upon his participation in an uncharged conspiracy to commit robbery.[2]

---

**2** CALCRIM No. 417 was given with CALCRIM No. 416, which also references theft as one of the potential target offenses. However, the trial court only modified the former instruction.

## 2. Relevant Legal Principles

When an appellant asserts instructional error, the nature of the prejudice resulting from the error "depends on whether a jury has been presented with a legally invalid or a factually invalid theory." (*Perez*, *supra*, 35 Cal.4th at p. 1233.) "When one of the theories presented to a jury is legally inadequate, such as a theory which ' "fails to come within the statutory definition of the crime" ' [citations], the jury cannot reasonably be expected to divine its legal inadequacy. The jury may render a verdict on the basis of the legally invalid theory without realizing that, as a matter of law, its factual findings are insufficient to constitute the charged crime." (*Ibid.*) In such circumstances, "[t]he reviewing court must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a reasonable doubt." (*People v. Aledamat* (2019) 8 Cal.5th 1, 13 [applying *Chapman v. California* (1967) 386 U.S. 18].)

"In contrast, when one of the theories presented to a jury is factually inadequate, such as a theory that, while legally correct, has no application to the facts of the case, we apply a different standard. [Citation.] In that instance, we must assess the entire record, 'including the facts and the instructions, the arguments of counsel, any communications from the jury during deliberations, and the entire verdict.' [Citation.] We will affirm 'unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact found the defendant guilty solely on the unsupported theory.' " (*Perez*, *supra*, 35 Cal.4th at p. 1233; *People v. Guiton* (1993) 4 Cal.4th 1116, 1129 ["If the inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground"].)

14.

### 3. Analysis

Here, the jury was erroneously instructed that to find Blackwood guilty of robbery, the People must prove: "1. The defendant conspired to commit … Robbery; [¶] 2. A member of the conspiracy committed theft to further the conspiracy; [¶] AND [¶] 3. Robbery was the natural and probable consequence[] of the common plan or design of the crime that the defendant conspired to commit [Robbery]." The modified instruction was erroneous. As written, the instruction incorrectly states that "robbery" is a natural and probable consequence of the target offense of "robbery."

An erroneous legal instruction implicates the more stringent standard of prejudice articulated in *Chapman*. "The reviewing court must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a reasonable doubt." (*People v. Aledamat*, *supra*, 8 Cal.5th at p. 13.) The question is not whether we believe it clear beyond a reasonable doubt that the defendant is guilty under the legally correct theory, but whether we can say, beyond a reasonable doubt, that the legally incorrect jury instruction did not taint the actual jury verdict. (*People v. Thompkins* (2020) 50 Cal.App.5th 365, 399.) We are persuaded the erroneous instruction here was harmless for two reasons.

First, the prosecutor did not discuss the natural and probable consequences aspect of coconspirator liability in his closing argument. He argued Blackwood and his accomplice conspired to commit robbery and then worked in concert to achieve their shared purpose. In other words, the sole theory of liability emphasized by the prosecutor was Blackwood's participation in an uncharged conspiracy to commit robbery. The fact that the prosecutor did not rely upon the invalid theory in argument to the jury supports the conclusion that the jury did not likely rely upon this improper theory during its deliberations. (See *In re Martinez* (2017) 3 Cal.5th 1216, 1227 [observing the

15.

prosecutor's emphasis upon an invalid theory in closing argument and "an inquiry by the jury during its deliberations suggested that it was considering the" invalid theory].)

Second, although the modified instruction is confusing, it did not lower the prosecutor's burden of proof, nor did it mislead the jury. Because of the manner in which CALCRIM No. 417 was modified, it actually foreclosed the jury from finding Blackwood guilty of robbery as a natural and probable consequence of another planned crime, a theory which is unsupported by this record. Based upon the prosecutor's closing argument and the written jury instructions, the jury could only convict Blackwood of robbery if they concluded all of the elements of robbery had been proven beyond a reasonable doubt. To reach this conclusion, the jury would necessarily have to find Blackwood either aided and abetted the robbery, or that he was a coconspirator to that crime. We therefore conclude the erroneous instruction was harmless beyond a reasonable doubt.[3]

## III.    Appellant is Not Entitled to an Ability to Pay Hearing

Relying primarily upon *Dueñas*, Blackwood contends the trial court's imposition of fines, fees, and assessments without a determination of his ability to pay violated his right to due process under the federal and state Constitutions.[4] *Dueñas* held that due process of law requires the trial court to conduct an ability to pay hearing before it imposes court facilities and court operations assessments, and before the execution of any

---

[3]    In light of our conclusion that Blackwood was not prejudiced by the trial court's instructional error, we do not reach his assertion that his trial counsel was incompetent for failing to object to these errors below.

[4]    The question of whether a court must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments and, if so, which party bears the burden of proof regarding the defendant's ability to pay, is currently pending review before the California Supreme Court. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

16.

restitution fine imposed under section 1202.4.  (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.)

The People argue Blackwood has forfeited this claim.  They further contend the punitive restitution fine is not unconstitutionally excessive and imposition of the nonpunitive assessments without a hearing on Blackwood's ability to pay is harmless error in light of the record.  We agree the claim has been forfeited.

### A.     Background

At sentencing, the trial court imposed a $900 restitution fine (§ 1202.4), a matching, but stayed, parole revocation fine (§ 1202.45), a $40 court operations assessment (§ 1465.8, subd. (a)(1)), a $30 criminal conviction assessment (Gov. Code, § 70373, subd. (a)(1)), and a $38 theft fee (§ 1202.5).

### B.     Forfeiture

The People argue Blackwood is not entitled to relief because he did not object to the restitution fines, fee, and assessments in the trial court.  We agree with the People.

Here, because a $900 restitution fine was imposed, Blackwood had the statutory ability to object to the fine insofar as it exceeded the minimum amount required by statute.  (See § 1202.4, subd. (c).)  He declined to do so.  This court has previously concluded that a failure to object to fines where statutory authority to do so exists forfeits a *Dueñas* claim for any fine, fee, or assessment that later arose.  Consistent with our opinion in *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1073, the claim has thus been forfeited.

## **DISPOSITION**

The judgment of conviction is affirmed.

HILL, P. J.

I CONCUR:


MEEHAN, J.

**SMITH, J., Concurring and Dissenting.**

I concur in parts I and II of the majority opinion. However, I respectfully dissent from part III, finding that Blackwood has forfeited his challenge to the assessments imposed by the trial court at sentencing.

The majority concludes Blackwood has forfeited his right to request an ability to pay hearing on the fine, assessments, and the theft fee at issue because he did not object to the $900 restitution fine (Pen. Code,[1] § 1202.4, subd. (b)) imposed at sentencing.[2] Under section 1202.4, subdivision (d), a trial court may consider the defendant's inability to pay in setting the restitution fine in an amount in excess of the statutory minimum of $300. Because Blackwood could have but did not object to the imposition of the restitution fine, which was set above the statutory minimum, I agree with the majority's conclusion that Blackwood has forfeited his challenge to the restitution fine on appeal. As the theft fee imposed requires consideration of a defendant's ability to pay (see § 1202.5, subd. (a)), I would find Blackwood's challenge to this fee has also been forfeited.

Even if Blackwood had not forfeited his challenge to the restitution fine, I would affirm it. My reasoning is fully detailed in the lead opinion in *People v. Son* (2020) 49 Cal.App.5th 565, 599-601 (lead opn. of Smith, J.).

However, I depart from the majority where they conclude Blackwood's failure to object to the restitution fine upon *statutory* grounds, necessarily forfeited his *constitutional* challenge to the court operations assessment (§ 1465.8) and the court facilities assessment (Gov. Code, § 70373). By statute, the court operations and facilities

---

[1]     All further statutory citations are to the Penal Code unless otherwise indicated.

[2]     In addition to the restitution fine imposed under section 1202.4, subdivision (b), the court imposed and stayed a matching parole revocation restitution fine (§ 1202.45, subd. (a)). However, I do not separately address the latter because it is essentially a corollary of the former.

assessments must be imposed by the court "*on every conviction* for a criminal offense." (§ 1465.8, subd. (a)(1); Gov. Code, § 70373, italics added.) This is so regardless of a defendant's asserted inability to pay.

Although it is tempting to conclude that Blackwood's failure to object to the $900 restitution fine means he does not lack the ability to pay the assessments (see *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1074), which total $70, such an inference is purely speculative. Blackwood's failure to raise a challenge to the restitution fine could just as well be attributed to trial counsel's inadvertence.

In any event, the fact that an objection was not raised to the restitution fine does not change the fact that Blackwood had no way of meaningfully raising an objection to the assessments. At the time of Blackwood's sentencing hearing, the trial court lacked statutory authority or case precedent to consider an objection to the mandatory assessments based upon an asserted inability to pay.

Blackwood was sentenced prior to the Second Appellate District, Division Seven's opinion in *People v. Dueñas* (2019) 30 Cal.App.5th 1157. "[P]rior to *Dueñas*, it was not reasonably foreseeable that a trial court would entertain an objection to assessments that are prescribed by statute." (*People v. Santos* (2019) 38 Cal.App.5th 923, 932.) Although the defendant in *Dueñas* requested a hearing on her ability to pay attorney fees and court fees (*Dueñas, supra*, 30 Cal.App.5th at p. 1162), it is unreasonable to have expected other defendants, pre-*Dueñas*, to have made a similar request. The assessments at issue here "have existed in California for decades and have been imposed in countless cases without previously generating an appellate ruling that imposition of them on the indigent is unconstitutional." (*People v. Son, supra*, 49 Cal.App.5th at p. 597.)

*Dueñas* announced a new, unexpected application of the law. When, as here, a defendant's challenge on direct appeal is based on a newly announced constitutional principle that could not reasonably have been anticipated at the time of trial, reviewing courts have traditionally declined to apply the rule of forfeiture. (*People v. Son*, *supra*,

2.

49 Cal.App.5th at p. 598; *People v. Montes* (2021) 59 Cal.App.5th 1107, 1119; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1031.)  I would decline to find forfeiture here.

For the reasons discussed in *People v. Son*, *supra*, 49 Cal.App.5th 565, I would remand this case back to the lower court to afford Blackwood the opportunity to request a hearing on his inability to pay the nonpunitive assessments.  To the extent that Blackwood further contends the restitution fine, the assessments, and the theft fee violate the Excessive Fines Clause of the Eight Amendment, I would permit him to raise that issue in the trial court in the first instance.

SMITH, J.